J-S33022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD E. TOKARCIK, JR. | : | |
| | : | |
| Appellant | : | No. 166 WDA 2023 |

Appeal from the PCRA Order Entered January 12, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000132-2017

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: December 8, 2023**

Richard E. Tokarcik, Jr. (Appellant), appeals *pro se* from the order entered in the Jefferson County Court of Common Pleas, denying his second Post Conviction Relief Act[1] (PCRA) petition as untimely filed. Appellant seeks relief from the judgment of sentence of 10 to 20 years' imprisonment, imposed following his 2017 jury convictions of attempt to commit statutory sexual assault[2] and related offenses. He now cites, as he did before the PCRA court, newly discovered evidence in the form of: (1) alleged new testimony by the investigating officer that he did not in fact commit the instant crimes; and (2)

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 901(a), 3122.1(b).

documentation that would refute the officer's trial testimony that video or audio recording of his incriminating statements was not possible.[3]  We affirm.

## I.  Facts & Procedural History

As this Court has previously set forth a detailed recitation of the underlying facts, we need not repeat them here.  *See Commonwealth v. Tokarcik*, 741 WDA 2018 (unpub. memo. at 2-4) (Pa. Super. Oct. 30, 2019) (direct appeal), *appeal denied*, 439 WAL 2019 (Pa. May 13, 2020).  Nevertheless, we summarize the following, relevant trial testimony of Brookville Police Officer Andrew Turnbull.

On January 6, 2017, Officer Turnbull learned that at least two female high school students received sexually explicit and "creepy" text messages from someone named "Adam" with the phone number, #814-541-5490.  *See* N.T., 10/19/17, at 46-48; *Tokarcik*, 741 WDA 2018 (unpub. memo. at 2).  That same afternoon, Officer Turnbull used two other cell phones[4] and, posing as fictitious 16 and 15 year old sisters, initiated text conversations with the above phone number, #814-541-5490.  N.T., 10/19/17, at 49-51.  The text conversations spanned approximately 35 hours, and the officer described them as "[e]xtremely sexual."  *Id.* at 49-50.

_____

[3] The Commonwealth has filed a letter, advising it will not file an appellee's brief.

[4] Officer Turnbull used his own personal cell phone and a police department-provided phone.  N.T., 10/19/17, at 49, 51.

Eventually, "Adam" and the two girls agreed to meet at a particular location around midnight on the night of January 7, 2017. *See Tokarcik*, 741 WDA at 2. Close to the meeting time, Officer Turnbull received a message on the "15 year old girl's" line that stated, "Answer," and immediately thereafter, a call came from a different phone number with an Ohio area code.[5] *See id.*; N.T., 10/19/27, at 66-67, 72. The officer let this call go to voicemail, but a second phone call "immediately" came, and Officer Turnbull answered it, masking his voice to sound like a girl and stating they were on their way to meet him. N.T., 10/19/27, at 67, 72-73.

Officer Turnbull then alerted Officer Justin Miller, who was positioned in his patrol car to stop the suspect.[6] *See* N.T., 10/19/27, 29, 73. Officer Miller stopped the suspected vehicle and detained Appellant, who was the driver and sole occupant. *See id.* at 32-33, 74. Officer Turnbull, along with Officer Mark Humes, arrived three to four minutes later. *Id.* at 74. According to Officer Turnbull, Appellant made incriminating statements.[7] *Id.* at 76. Two cell

---

[5] A later trial court opinion stated this phone number was #440-850-9572. *See* Opinion on Motion for Return of Property, 3/25/22, at 1.

[6] Although not relevant to this appeal, we note the officers had reasons to believe the suspect was an older man, driving an older model car. *See* N.T., 10/19/27, at 47-48, 73.

[7] Particularly, Officer Turnbull asked Appellant, "Do you understand why this is happening tonight?" N.T., 10/19/17, at 75-76. Appellant allegedly replied, "Yes, I do. You have my messages[,]" and further "stated something to the
*(Footnote Continued Next Page)*

phones were in plain view in the rear of Appellant's vehicle. *Id.* at 77. Officer Turnbull used his phone to call both the #814-541-5490 number and the Ohio area-code phone number, upon which both phones in Appellant's vehicle "lit up." *Id.* Appellant was transported to the police station, where he admitted he was on his way to meet and have sexual relations with two minor girls. *Id.* at 79-80.

Following a jury trial on October 19, 2017, Appellant was found guilty of attempt to commit statutory sexual assault, unlawful contact with a minor/sexual abuse of children, criminal solicitation/child pornography, criminal use of a communication facility, and two counts of attempt to commit corruption of minors.[8] On February 7, 2018, the trial court imposed an aggregate sentence of 10 to 20 years' imprisonment.

Appellant took a direct appeal, and on October 30, 2019, this Court affirmed the judgment of sentence. *See Tokarcik*, 741 WDA 2018. On May 13, 2020, the Pennsylvania Supreme Court denied his petition for allowance of appeal.

In June of 2020, Appellant filed a *pro se* timely, first PCRA petition. Subsequently appointed counsel, however, filed a petition to withdraw from

_____

extent of: I knew what I was doing was wrong. I knew they were too young and he . . . was lonely." *Id.* at 76.

[8] 18 Pa.C.S. §§ 6318(a)(5) (referring to 6312(d)), 7512(a), 6301(a)(1)(i), respectively.

representation.[9]   The PCRA court granted this petition and dismissed Appellant's PCRA petition.   Appellant timely appealed to this Court, which affirmed on March 11, 2022.   Appellant then filed a petition for allowance of appeal (discussed *infra*).   *See Commonwealth v. Tokarcik*, 25 WDA 2021 (unpub. memo.) (Pa. Super. Mar. 11, 2022), *appeal denied*, 188 WAL 2022 (Pa. Nov. 29, 2022).

## II.  Motion for Return of Property & Second PCRA Petition

Meanwhile, in July of 2020 (one month after the filing of his first PCRA petition), Appellant filed a motion for return of the two cell phones recovered from his vehicle.[10]   *See* Opinion on Motion for Return of Property at 1.   The court held a hearing on March 23, 2022, at which Officer Turnbull purportedly testified.[11]   We note Appellant has requested a transcript of this hearing,[12] but none was included in the certified electronic record transmitted on appeal.   In any event, the trial court granted Appellant's request in part, allowing for the

---

[9] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[10] The trial court issued two orders on March 25, 2022, one of which also referred to a third phone, described as "[t]he black and silver cell phone." *See* Order, 3/25/22.

[11] The trial court initially denied this motion on July 31, 2020, reasoning the evidence clearly established a nexus between both phones and the underlying crimes.  Order on Motion for Return of Property, 7/31/20.

[12] *See* Appellant's Post Conviction Relief Act Petition, 10/24/22, at 2.

return of the phone bearing an Ohio area code. ***See id.*** The court considered that "someone — presumably [Appellant] — had used" this phone to call Officer Turnbull's phone earlier that night, but when the officer answered it, Appellant addressed the officer by his first name, Andrew.[13] ***Id.*** The court concluded this phone did **not** bear a link to criminal activity. ***Id.*** However, the court ordered the cell phone, with the #814-541-5490 number, to be destroyed, reasoning it was used to send the messages to the girls. ***See id.*** at 1; Order, 3/25/22.

Next, on October 24, 2022, Appellant filed the underlying *pro se* PCRA petition. As we discuss in detail ***infra***, at this time, Appellant's petition for allowance of appeal, in connection with his first PCRA petition — was still pending. First, Appellant alleged that at the March 23, 2022, hearing on his petition for the return of property, Officer Turnbull testified Appellant "did not do anything illegal with his cellular telephone[,]" and this statement contradicted the officer's trial testimony. Appellant's Post Conviction Relief

_____

[13] The trial court recalled that when Officer Turnbull did not answer the first phone call, the call would have gone to voice mail, and the caller would have heard the officer's outgoing message, which included his first name. Opinion on Motion for Return of Property at 2. Furthermore, we note, at trial, Officer Turnbull explained that after he learned the high school students had received inappropriate text messages, but before he began messaging with Appellant: he called the #814-541-5490 number; no one answered; and the officer left a voice message, identifying himself and stating, "[D]on't be talking to girls like this." N.T., 10/19/17, at 48.

Act Petition at 1. Appellant concluded this "changed testimony" established that he did not commit the crimes. *Id.*

By way of background for Appellant's second PCRA claim, we first review that at trial, Officer Turnbull testified that the January 8, 2017, incriminating statement, which Appellant gave at the police station, was not recorded because the station lacked the necessary audio and video equipment. *See* N.T., 10/19/17, at 93. Appellant averred that on August 4, 2022, he received "documentation" showing the police station had in fact purchased recording equipment two years earlier, on August 17, 2015.[14] Appellant's Post Conviction Relief Act Petition at 2. Appellant reasoned this evidence "impeach[ed]" the officer's trial testimony. Appellant's Post Conviction Relief Act Petition at 2. Appellant then alleged his statement was in fact recorded, but the Commonwealth withheld it because it would show he did not commit the crimes. *Id.* Finally, Appellant claimed his attempts to obtain this new information were hampered by COVID-19 pandemic-related "restraints" on his use of the prison law library. *Id.*

_____

[14] Appellant attached a receipt for this purchase. On appeal, he attaches to his brief a letter from the Brookville Borough, dated July 27, 2022, which states it is responding to his Pennsylvania Right to Know Law, 65 Pa.Stat.Ann. §§ 67.101 to 67.3104, request for information as to when the Brookville Police Department obtained video capability. Appellant's Brief, Ex. F, Ltr. From Dana D. Rooney, Borough Manager, 7/27/22. This letter stated the video capability was purchased on August 17, 2015. *Id.*

Subsequently, on November 29, 2022, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal, again with respect to the denial of his first PCRA petition.

Next, on December 7, 2022, Appellant filed a *pro se* "Addendum" to his PCRA petition, citing additional documentation that would prove Officer Turnbull's trial testimony was false. Addendum to Post Conviction Relief Act Petition, 12/7/22, at 2. By way of background, we summarize that at trial, Officer Turnbull testified that although Officer Miller's patrol vehicle had a mobile video recorder (MVR), the police department's server had "crashed" for three or four days, and thus the video was not downloaded and the officers could not view any recording of the vehicle stop and arrest. **See** N.T., 10/19/17, at 88-89. In the PCRA petition addendum, Appellant claimed that on October 14, 2022, he received a letter from the Brookville Municipal Authority — attached to the addendum — which he interpreted to state "the servers never crashed."[15] Addendum to Post Conviction Relief Act Petition at 2 & Ex. D.

---

[15] Our review of the letter reveals instead that the Brookville Municipal Authority stated: it did not have knowledge of a server crash between January 8 and October 19, 2017; if there were such a crash, there would be an invoice for repairs; but one was not found in the search for records. Addendum to Post Conviction Relief Act Petition, Ex. D, Ltr. From Dana D. Rooney, Borough Manager, 10/5/22.

On December 12, 2022, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing, reasoning the petition was untimely filed under the PCRA's filing requirements. Appellant filed a *pro se* response on January 6, 2023. On January 12th, the PCRA court dismissed the petition.

Appellant took this timely *pro se* appeal and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

### III. Timeliness of PCRA Petition

On appeal, *pro se* Appellant presents one issue for our review:

> Did the [PCRA] court not err in di[s]missing Appellant's [PCRA] petition, which was filed on October 24, 2022, without conducting an evidentiary hearing in violation of Pa.R.Crim.P. 908(A)(2), where Appellant raised genuine issues [of] material fact in his petition, and submitted documentation certifying the factual discrep[a]ncy to be raised at a hearing?

Appellant's Brief at 2.

At this juncture, we review the applicable standard of review:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. . . .

**Commonwealth v. Smith**, 194 A.3d 126, 132 (Pa. Super. 2018) (citation omitted).

This Court has explained:

> [T]he PCRA's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies[.]

*Smith*, 194 A.3d at 132 (citation omitted). Pertinently, Subsection 9545(b)(1)(ii) provides that a PCRA petition may be filed beyond the general one-year deadline when the petitioner proves "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). "Due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." *Smith*, 194 A.3d at 134 (citations omitted). A petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Furthermore, we consider:

> "Although a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence."

*Smith*, 194 A.3d at 133 (citation omitted).

- 10 -

Appellant avers the PCRA court erred in finding his petition was untimely and in dismissing his petition without a hearing. He presents several different claims, which we address *seriatim*.

First, Appellant contends the trial court's granting of his motion to return the "phone" establishes the court's agreement that Officer Turnbull's "new testimony proved . . . Appellant did not commit the criminal act as [the officer] previously d[e]scribed at trial." Appellant's Brief at 8.

We reiterate this claim was raised in Appellant's October 24, 2022, PCRA petition, which was filed while his petition for allowance of appeal was still pending. Although a PCRA court is "not jurisdictionally barred from considering multiple PCRA petitions relating to the same judgment of sentence at the same time," review is barred when a previously filed petition is on appeal. ***Commonwealth v. Montgomery***, 181 A.3d 359, 365 (Pa. Super. 2018) (*en banc*). Accordingly, we determine the PCRA court properly dismissed this petition.[16]

Moreover, Appellant's discussion of this claim in both the PCRA petition and on appeal refer to the return of the "phone," in the singular. ***See*** Appellant's Brief at 8; Appellant's Post Conviction Relief Act Petition at 1. He wholly fails to address the fact that he sought the return of at least two

_____

[16] "This Court may affirm a PCRA court's decision on any grounds if the record supports it." ***Smith***, 194 A.3d at 135 n.4.

different phones. While the PCRA court returned one phone, which it found bore no link to criminal activity, the court denied return of the other phone, which Appellant did use to send sexually explicit text messages to the fictitious girls. *See* Opinion on Motion for Return of Property at 1. The PCRA court set forth this reasoning in its Rule 907 notice, but Appellant does not refute or discuss it on appeal. *See* Notice of Intention to Dismiss PCRA Petition, 12/12/22, at 1. Accordingly, no relief would be due on the merits.

Next, Appellant maintains he presented newly discovered evidence — two letters from the Brookville Borough — which raised genuine issues of material fact. Appellant's Brief at 7, 9, 11. He reiterates this evidence controverted Officer Turnbull's trial testimony that a server crash prevented a download of the patrol vehicle's MVR video, and that the police station did not have recording equipment. *Id.* at 9, 11. Appellant asserts this new evidence "raises an inference that the [MVR] video was never lost, but went missing because it was favorable to the defense." *Id.* at 9. Appellant thus claims the Commonwealth committed *Brady*[17] violations. *Id.* at 10-11. He insists the new information was unknown to him and "[i]t is inconceivable" that he or his

---

[17] *Brady v. Maryland*, 373 U.S. 83 (1963). "In *Brady*, the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' *Smith*, 194 A.3d at 132 n.1.

counsel could have done anything "to obtain facts that they did not know existed." *Id.* at 15. No relief is due.

In concluding the PCRA petition was untimely filed, the PCRA court disagreed with Appellant's claim that he could not have obtained the information earlier with due diligence. Notice of Intention to Dismiss PCRA Petition at 3. As stated above, Appellant's alleged new facts were that: (1) there was no server crash between January 8, 2017 (when Appellant was arrested in the early morning hours) and October 19, 2017; and (2) the Brookville Police Department purchased "video capability" on August 17, 2015. The PCRA court reasoned these dates predate Appellant's trial by more than two years, and thus found this information was in fact available long before trial. *Id.* Furthermore, the court rejected Appellant's reliance on COVID-19 related restrictions, as they dd not arise for nearly two and a half years **after** he was found guilty. *Id.*

Appellant does not address this reasoning, and instead baldly insists it is "inconceivable to fathom what [he or counsel] could have done to obtain" these facts. *See* Appellant's Brief at 15. We agree with the PCRA court's sound reasoning, along with its conclusion that Appellant has not shown he could not have obtained the evidence earlier with the exercise of due diligence. *See Smith*, 194 A.3d at 132-34.

### IV. Conclusion

For the foregoing reasons, we affirm the PCRA court's dismissal of Appellant's PCRA petition on untimeliness grounds. Furthermore, as the petition was untimely, the court had no jurisdiction to conduct an evidentiary hearing. *See Smith*, 194 A.3d at 134.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/8/2023